UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Alieu Sheriff

    v.

Four Cousins Burgers
and Fries of NH, LLC
d/b/a Five Guys, et al.

Case No. 21-cv-571-PB
Opinion No. 2023 DNH 056

ORDER

Alieu Sheriff filed a negligence complaint against Four Cousins Burgers and Fries, LLC (Four Cousins), Gellfam Management Corporation (Gellfam), and Great Bons, Inc. (Great Bons). Sheriff alleges that he was attempting to make an early morning delivery at a Five Guys restaurant in Tilton, New Hampshire, when he was accosted inside the restaurant by Nick Gagnon and Adam Briggs, who were there performing maintenance and repairs. According to Sheriff, Gagnon and Briggs confronted him with a gun and a knife, but they later put their weapons away after they determined that Sheriff had entered the restaurant to make a delivery. Sheriff claims he suffered post-traumatic stress disorder because of the incident.

Sheriff has filed a motion for partial summary judgment seeking a determination that Four Cousins and Gellfam are "responsible, under the doctrine of respondeat superior, for the actions and omissions of Nick

Gagnon, Adam Briggs, Scott Chretien [the manager of the restaurant], and any other employees associated with the Tilton, N.H. Five Guys." Doc. 76. For the following reasons, I grant the motion in part and deny it in part.

## I.   FACTS

The Tilton Five Guys is operated pursuant to a franchise agreement between Five Guys Enterprises, LLC and Four Cousins. Among other things, the franchise agreement obligates Four Cousins "[t]o maintain a competent, conscientious, properly trained staff." Doc. 76-3 at 8. Gellfam is the sole member of Four Cousins. Doc. 76-2 at 6. William Gellert signed the franchise agreement for Four Cousins on behalf of Gellfam. Id. Gellert is a managing member of both Four Cousins and Gellfam, and he is the president of Great Bons. Id. at 4.

Great Bons is a subsidiary of Gellfam. Id. at 8. Great Bons paid the salaries of Gagnon, Briggs, and other employees who worked at the Tilton Five Guys, but Gellfam was responsible for setting employee compensation and bonuses. Id. at 8-9, 12-13. Great Bons also managed payroll tax withholdings for the restaurant's employees and paid their workers' compensation insurance premiums. Id. Great Bons, however, did not have any responsibility for training, supervising, managing, or disciplining staff. Id. at 16, 34-35.

Gagnon was hired as maintenance manager for the New Hampshire Five Guys franchises by Patrice Leys, Gellfam's vice president of operations. Id. at 17; Doc. 76-4 at 5. Gagnon was given considerable discretion in the performance of his job and reported only as needed to senior Gellfam management, including Leys, James Hay, the area manager for New Hampshire, and Kipp Johnson, Gellfam's human resources manager. Doc. 76-4 at 5, 9. Gagnon, in turn, supervised Briggs. See id. Gagnon and Briggs were required as employees to acknowledge receipt of the Gellfam Employee Manual as a condition of their employment. Doc. 76-2 at 11. After the incident with Sheriff, Gagnon reported the matter to Johnson. Doc. 76-4 at 20-21. Gellfam again required Gagnon to acknowledge receipt of the manual and informed him that any further violations of Gellfam's policies (such as bringing weapons to work) would result in his termination. Id.; Doc. 76-2 at 16-17.

## II.   ANALYSIS

Because Sheriff has the burden of proof, he is not entitled to summary judgment unless the evidence produced in support of the motion is conclusive. E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2022). Applying this demanding standard, I conclude that Gagnon and Briggs were employees of Gellfam. But I decline to rule as a matter of law that they were also

employees of Four Cousins, or that they acted within the scope of their employment when they confronted Sheriff.

When determining the existence of an employee-employer relationship for purposes of respondeat superior liability, the key question is "whether on all the facts the community would consider the person an employee." Boissonnault v. Bristol Federated Church, 138 N.H. 476, 478 (1994) (quoting Hunter v. R.G. Watkins & Son, Inc., 110 N.H. 243, 246 (1970)). The court examines this question in light of "the totality of the circumstances," including the criteria listed in Restatement (Second) of Agency § 220 (1958). Porter v. City of Manchester, 155 N.H. 149, 153 (2007).

Under this test, whether an employer has the right to control an employee's performance of the work "may be a decisive factor." Hunter, 110 N.H. at 246; see Restatement (Second) of Agency § 220 cmt. d. (noting that "control or right to control the physical conduct of the person giving service is important and in many situations is determinative"); see also Restatement (Third) of Agency § 2.04 cmt. b. (2007) ("Respondeat superior is inapplicable when a principal does not have the right to control the actions of the agent that makes the relationship between principal and agent performing the service one of employment as defined in § 7.07(3)."); id. § 7.07(3) (defining an employee as "an agent whose principal controls or has the right to control the

4

manner and means of the agent's performance of work").[1] An employer, however, "need not have control over every detail of an employee's performance in order to be liable for the employee's torts." Cont'l Ins. Co. v. N.H. Ins. Co., 120 N.H. 713, 717 (1980). In other words, an employee can be entrusted to use "discretion in performing their work," so long as the employer "retain[s] a right of control, however infrequently exercised." Restatement (Third) of Agency § 7.07 cmt. f. Senior corporate officers and skilled professionals are among employees whose "employer's right of control may be attenuated" but is nonetheless sufficient for liability to attach. Id.

Sheriff argues that the undisputed evidence shows that Gellfam and Four Cousins employed Gagnon, Briggs, and the other staff at the Tilton Five Guys. The defendants concede that Gagnon and Briggs were employees, as opposed to independent contractors, but they argue that Great Bons was their sole employer.

---

[1] Other indicia of an employee-employer relationship include "whether the agent is engaged in a distinct occupation or business; whether the type of work done by the agent is customarily done under a principal's direction or without supervision; the skill required in the agent's occupation; whether the agent or the principal supplies the tools and other instrumentalities required for the work and the place in which to perform it; the length of time during which the agent is engaged by a principal; whether the agent is paid by the job or by the time worked; whether the agent's work is part of the principal's regular business; whether the principal and the agent believe that they are creating an employment relationship; and whether the principal is or is not in business." Restatement (Third) of Agency § 7.07 cmt. f.; see Porter, 155 N.H. at 153-54.

The totality of the undisputed evidence shows that Gellfam, not Great Bons, employed the staff working at the Five Guys restaurant in Tilton. Although Great Bons is listed as the employer on Gagnon's and Briggs's W-2 forms, Gellert testified that Great Bon's "only function was to serve as a conduit to pay people and handle workers' comp." Doc. 76-2 at 9. Gellert also testified that Great Bons had no responsibility for either setting compensation or training, supervising, managing, or disciplining the staff. Id. at 13, 16, 34-35. On this record, it is undisputed that Great Bons did not retain a right of control over the work of Gagnon or Briggs. Therefore, even construing the record in the light most favorable to the defendants, no reasonable jury could conclude that Great Bons was the employer.[2]

By contrast, the record evidence conclusively demonstrates that Gellfam had both fiscal and managerial control over Gagnon and Briggs. Gellfam set their compensation and required them to acknowledge receipt of the Gellfam Employee Manual as a condition of their employment. Gellfam employees hired and supervised Gagnon, who in turn supervised Briggs. Although Gagnon was a skilled professional who did not require day-to-day

---

[2] The defendants cite to statements by Gellert and Gagnon that Great Bons employed Gagnon and Briggs. It is clear, however, that their conclusions on this point were based solely on the fact that Gagnon and Briggs were paid by Great Bons. Accordingly, I attach no additional significance to their statements.

supervision, the record makes clear that Gellfam retained the right of control, even if Gellfam exercised it infrequently. Indeed, Gellfam exercised its control over Gagnon after the Sheriff incident, when it required him to sign a new acknowledgement of the Gellfam Employee Manual and warned him that he would be terminated for further violations of Gellfam's policies. On these facts, the only conclusion a reasonable jury could reach is that Gellfam was the employer. Accordingly, Sheriff is entitled to partial summary judgment on his claim that Gagnon and Briggs were employees of Gellfam.[3]

Although it is conceivable that Gagnon and Briggs could also be deemed to be employees of Four Cousins, the evidence on this point is not conclusive. Sheriff relies exclusively on the fact that the franchise agreement obligates Four Cousins "[t]o maintain a competent, conscientious, properly trained staff." Doc. 76-3 at 8. But he points to no provision in the agreement that would have precluded Four Cousins from delegating that responsibility to Gellfam. More importantly, the only evidence of Four Cousins' involvement is that it held the license and leased the premises for the Tilton restaurant, which is insufficient to establish that Four Cousins had the requisite control

---

[3] The parties have not adequately briefed the issue of whether Gagnon and Briggs were acting within the scope of their employment when they confronted Sheriff. Therefore, I make no determination on that issue.

7

over the restaurant's staff.[4] Accordingly, I decline to grant Sheriff's motion with respect to Four Cousins.

### III.  CONCLUSION

For the foregoing reasons, I grant Sheriff's motion for summary judgment (Doc. 76) only to the extent that I determine as a matter of law that Gagnon and Briggs were employees of Gellfam. In all other respects, Sheriff's motion is denied without prejudice to his right to press his additional arguments at trial.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

May 11, 2023

cc: Counsel of record

---

[4] The defendants deny that Four Cousins retained any right of control over the work performed by Gagnon and Briggs, stating that "there is even less of a connection between Four Cousins and Mr. Briggs and Mr. Gagnon" than between Gellfam and the two men. Doc. 82 at 6.