## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Alieu Sheriff**

       v.                                                    Case No. 21-cv-571-PB

                                               Opinion No. 2023 DNH 133

**Four Cousins Burgers**
**& Fries of NH, LLC**
**d/b/a Five Guys, et al.**

## MEMORANDUM AND ORDER

Alieu Sheriff, a food delivery worker, was accosted by two armed maintenance workers inside a Five Guys restaurant while making an early morning delivery. Sheriff has sued both the franchisee that operated the restaurant and the business that employed the maintenance workers. The defendants have responded with a motion for summary judgment. For the reasons set forth below, I deny the defendants' motion.

## I.    BACKGROUND

### A.    Factual Background

Sheriff, an employee of Reinhart Food Services, LLC, was attempting to make an early morning food delivery to a Five Guys restaurant in Tilton, New Hampshire when the events that gave rise to his claim occurred. Doc. 86-13 at 60-61. Upon his arrival, Sheriff used a key he obtained from one of the defendants to enter through the restaurant's main entrance. Id. His entry

triggered an alarm, and he proceeded toward the restaurant's kitchen to disable the alarm and complete his delivery. Id. at 62-64.

Unbeknownst to Sheriff, two maintenance workers—Nick Gagnon and Adam Briggs—were also onsite to repair the tiling in the kitchen. Id. at 63-64; Doc. 86-11 at 44. At the sound of the alarm, Gagnon and Briggs, who were similarly unaware of Sheriff's scheduled delivery, moved to investigate. Doc. 86-11 at 52-53, 58. Brandishing a gun and knife, respectively, they encountered Sheriff outside the kitchen doors. Doc. 86-13 at 66-68. Gagnon and Briggs quickly recognized Sheriff's delivery uniform, lowered their weapons, and returned to their repairs. Doc. 86-11 at 54-55. No verbal statements or threats were made to Sheriff, and Sheriff was not physically injured. Doc. 86-13 at 69-70, 86.

Although Sheriff was able to finish his delivery route that day, he suffered severe emotional distress and was unable to work for a significant amount of time thereafter. Id. at 36-39, 83-84. He experienced numerous symptoms, including anxiety, nightmares, and intrusive thoughts, and was subsequently diagnosed with post-traumatic stress disorder (PTSD) and prescribed medications to help manage his symptoms. Id. at 86-87; Doc. 86-3 at 4-6. The encounter also resurfaced several traumatic childhood events Sheriff experienced while growing up during Sierra Leone's civil war,

including suffering his own injuries and witnessing the murders of his father
and two uncles. Doc. 86-13 at 121-23.

## B.   **Procedural Background**

Sheriff has grouped his claims into a single count of negligence against
the franchisee of the Tilton Five Guys restaurant, Four Cousins Burgers &
Fries of NH, LLC (Four Cousins), and the entity that employed the
maintenance workers, Gellfam Management Corporation (Gellfam).[1] Doc. 48.
Sheriff argues that the defendants are directly liable for their own negligence
and vicariously liable for the negligence of the maintenance workers. Id. at 3
He asserts that the defendants are directly liable because they failed to keep
the premises "free of hazards" and "warn those entering the premises" of
those hazards. Id. He also alleges that defendants negligently "supervis[ed],
train[ed], and instruct[ed]" their employees by failing to "make them aware of
scheduled visits by vendors," such as Sheriff, or "prevent[ing] them from
alarming or harming" lawful entrants. Id. Sheriff bases his vicarious liability
claim on his contention that Gagnon and Briggs, while acting for their
employers, failed to "tak[e] reasonable steps to investigate" the disturbance

---

[1]     Sheriff also sued Great Bons, Inc., a subsidiary of Gellfam that paid the
maintenance workers and managed their tax withholding. He later
abandoned those claims after I granted the summary judgment on cross
claims asserted against Great Bons by Four Cousins and Gellfam. Doc. 84;
Doc. 90.

Sheriff caused when he entered the restaurant and improperly brandished their weapons when they encountered Sheriff. Id.

## II.    STANDARD OF REVIEW

Summary judgment is warranted when the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). A "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A "genuine dispute" exists if a factfinder could resolve the disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." Irobe, 890 F.3d at 377 (quoting Borges ex rel.

S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). If the nonmovant

fails to adduce such evidence, the motion must be granted. Celotex, 477 U.S.

at 324. In considering the evidence, the court must draw all reasonable

inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare

LLC, 890 F.3d 342, 348 (1st Cir. 2018).

### III.   ANALYSIS

To recover on a negligence claim, a plaintiff must prove "the existence

of a duty, the breach of which proximately cause[d] injury to the plaintiff."

Smith v. Cote, 128 N.H. 231, 240 (1986). The scope of the defendant's duty is

limited to the risks that are "reasonably foreseeable." Macie v. Helms, 156

N.H. 222, 224-25 (2007). Additionally, where the plaintiff seeks to recover for

emotional distress without an accompanying physical injury, as in this case,

he must establish that he suffered "serious mental and emotional harm

accompanied by objective physical symptoms." Tessier v. Rockefeller, 162

N.H. 324, 342 (2011); Moore v. Mortg. Elec. Registration Sys., Inc., 848

F. Supp. 2d 107, 135 (D.N.H. 2012). In most such cases, the plaintiff must

establish those physical symptoms and their causal relationship to the

defendants' negligence through expert testimony. Thorpe v. State, 133 N.H.

299, 304 (1990); O'Donnell v. HCA Health Servs. of N.H., Inc., 152 N.H. 608,

611 (2005).

Four Cousins and Gellfam contend that they are entitled to summary judgment on Sheriff's negligence claim for three reasons. First, they argue that Sheriff cannot prove the causation and physical symptom components of his claim because his expert disclosures were untimely and inadequate. Doc. 86-1 at 11-12. Second, they contend that they did not owe Sheriff a duty of care because they could not have reasonably foreseen that their conduct would lead to Sheriff's injuries. Id. at 18-19. Finally, they assert that Sheriff's vicarious liability claim fails because he cannot prove that the maintenance workers were acting within the scope of their employment when they confronted Sheriff. Id. at 14-17. I address each argument in turn.

A.      **Causation and Physical Symptoms**

Sheriff plans to prove the causation and physical symptom components of his claim by calling his treating providers and other medical professionals who were commissioned by third parties to perform his independent medical examinations (IMEs). The defendants argue that none of Sheriff's expert witnesses should be permitted to testify because Sheriff failed to comply with his expert disclosure obligations. Id. at 11-12. They alternatively argue that, even if Sheriff's experts are permitted to testify, they cannot satisfy the causation and physical symptom requirements of New Hampshire law. Id. at 9-12.

1.     <u>Expert Disclosure Requirements</u>

Federal Rule of Civil Procedure 26(a)(2)(D) requires parties to make expert disclosures "at the times and in the sequence that the court orders." Sheriff was required to make his expert disclosures by February 1, 2023, but his attorney did not formally make the disclosures until March 6, 2023, approximately one month after the deadline had passed. Doc. 86-3. Because Sheriff's disclosures were untimely, Four Cousins and Gellfam argue that they cannot be considered. I disagree.

Federal Rule of Civil Procedure 37(C)(1) provides in pertinent part that a party who fails to properly disclose an expert witness "is not allowed to use that . . . witness . . . unless the failure was substantially justified or is harmless."[2] In the present case, I can consider the reports and records of Sheriff's proposed experts because his delay in making his disclosures was harmless.

Sheriff disclosed the records of his treating providers and the reports of several independent medical examiners in September 2021. <u>See</u> Doc. 34-3; Doc. 88-3. He also notified the defendants of his intention to call his treating

---

[2]     Rule 37 also permits a court to impose lesser sanctions than preclusion in certain circumstances, but the defendants have not filed a separate motion for sanctions. Accordingly, I consider here only whether Sheriff should be barred from relying on the reports of his proposed experts in resisting the defendants' summary judgment motion.

providers and medical examiners as expert witnesses in April 2022 while seeking an extension of his expert disclosure deadline. Doc. 41 at 1 (stating that "it is unclear whether it will be necessary to disclose liability experts (in addition to treating and examining medical providers, whose records and opinions contained therein have already been produced)"); Doc. 40 at 1 (same). Given these circumstances, defendants' conclusory assertion that they were somehow prejudiced by Sheriff's failure to formally disclose his experts by the February 1, 2023, deadline, Doc. 91 at 4, rings hollow.[3]

The defendants alternatively argue that, even if Sheriff's tardiness is excused, his expert disclosures cannot be considered because the disclosures do not contain sufficient information. Doc. 86-1 at 12. Again, I disagree. All of Sheriff's proposed experts are treating providers or independent medical examiners. Because he did not retain them to provide expert testimony, he is only required to identify each expert, describe the subject matter of the expert's testimony, and summarize "the facts and opinions to which the expert is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Sheriff's May 2023 disclosures minimally satisfy these requirements.

---

[3]     Although Sheriff later referenced only "treating medical providers" as potential witnesses in his December 5, 2022 email to the defendants, Doc. 86-4 at 2, the defendants have not argued that they were somehow misled by this exchange or Sheriff's failure to also mention the independent medical examiners.

2.     Sufficiency

Having determined that the medical records and reports from Sheriff's treating providers and independent medical examiners may be considered, the remaining question is whether they provide sufficient evidence of causation and physical symptoms, as required under New Hampshire law, to survive summary judgment.

Though defendants are correct that New Hampshire law has long precluded recovery for "mere upset, dismay, humiliation, grief and anger," courts have nevertheless recognized certain "painful mental experience[s]" as physical symptoms when they have "lasting effects" and are "susceptible to some form of objective medical determination." Corso v. Merrill, 119 N.H. 647, 652-53 (1979) (quoting Comment, Negligence and the Infliction of Emotional Harm: A Reappraisal of the Nervous Shock Cases, 35 U. Chi. L. Rev. 512, 517 (1968)). In doing so, New Hampshire has followed the Restatement (Second) of Torts, which provides that "even long continued mental disturbance[s], as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character." Restatement (Second) of Torts § 436A cmt. c (Am. Law Inst. 1965).

For example, in <u>Corso</u>, the New Hampshire Supreme Court held that the plaintiffs "may be able to prove" at trial that their depression diagnoses are "susceptible to objective medical determination," and thus, their "psychic injury" was sufficient to satisfy the "physical consequences" requirement. 119 N.H. at 658. Furthermore, as Sheriff notes, the First Circuit has expressly recognized a "PTSD diagnosis with accompanying symptoms" as "sufficient to satisfy the physical consequences requirement" for a negligent infliction of emotional distress claim under federal common law. <u>Sawyer Brothers, Inc. v. Island Transporter, LLC</u>, 887 F.3d 23, 41 (1st Cir. 2018). I have no reason to expect that the New Hampshire Supreme Court would follow a different path on the issue.

Here, Sheriff has provided medical records from several of his treating providers that discuss his PTSD diagnosis, which a jury could find sufficiently observable to constitute a physical symptom. <u>See, e.g.</u>, Doc. 86-5 at 7, 16. Moreover, his medical records document various other symptoms associated with his PTSD diagnosis, such as "problems with sleeping," which a jury could also reasonably find satisfy the physical symptoms requirement. <u>Id.</u> at 16; <u>see, e.g.</u>, O'Donnell, 152 N.H. at 611-12 (implying that "sleeping problems" could qualify as a "physical manifestations of [the plaintiffs']

distress"). Thus, a jury could reasonably find Sheriff's PTSD diagnosis sufficient to satisfy the "physical symptoms" requirement.

The question then becomes whether Sheriff's evidence sufficiently relates these symptoms to defendants' negligence. Judges in this district have, on occasion, found a plaintiff's expert testimony as to causation insufficient. For example, Judge Laplante awarded summary judgment to a defendant where there was "no admissible evidence suggesting that these providers can testify as to any physical manifestations of [the plaintiff's] claimed distress or its link to the defendants' conduct." Brodeur v. Claremont Sch. Dist., 626 F. Supp. 2d 195, 228 (D.N.H. 2009). And Judge McAuliffe ruled in favor of a defendant in part because the plaintiff's expert evidence explicitly noted that the claimed distress was "secondary" to other stressors unrelated to the allegedly tortious conduct. Pichowicz v. Hoyt, 2000 DNH 040, 2000 WL 1480445, at *2, 4 (D.N.H. Feb. 11, 2000).

Here, in contrast, Sheriff's medical records include opinions by his treating medical providers relating his PTSD and associated symptoms to his encounter with Gagnon and Briggs. See, e.g., Doc. 86-5 at 4 ("Onset of anxiety and depressive symptoms following stressful incident at work on 9/7/18[.]"); id. at 26 ("[Patient] . . . has had PTSD for past 3+ years. This resulted from his coming upon an armed robbery (gun and machete) when he was doing a

delivery[.]"). Based on this evidence, a jury could reasonably conclude that Sheriff's PTSD was caused by his encounter with Gagnon and Briggs. Accordingly, Sheriff has identified sufficient expert evidence to permit these questions to be presented to a jury.

**B.**   **Foreseeability**

The defendants next argue that Sheriff's encounter with the maintenance workers was "incredibly unforeseeable," and "no business or property owner could have reasonably anticipated" its occurrence. Doc. 86-1 at 18. In their view, they could not have reasonably foreseen that two maintenance workers, who were neither employed as guards nor permitted to carry weapons, might approach a person in Sheriff's position during their early morning repairs, armed with a gun and knife.[4] Id. Sheriff rejects this argument and contends that the encounter was foreseeable due to the "direct contact" between himself and defendants' employees. Doc. 88-2 at 7.

Every negligence claim "demands the existence of a duty from the defendant to the plaintiff." BK v. N.H. Dep't of Health and Human Servs., 814 F. Supp. 2d 59, 72 (D.N.H. 2011). The scope of this duty is, in turn,

---

[4]   It is unclear whether defendants are also arguing that Gagnon and Briggs could not have reasonably foreseen that their actions would cause emotional distress to Sheriff. To the extent that they are, I disagree. It is entirely foreseeable that drawing weapons on an unsuspecting person may cause emotional distress and psychological trauma.

"limited to those risks that are reasonably foreseeable." Macie, 156 N.H. at 225; accord Corso, 119 N.H. at 651 ("Duty and foreseeability are inextricably bound together."). Under New Hampshire law, whether a defendant owes a duty is a question of law for the court to decide. Maloney v. Badman, 156 N.H. 599, 602 (2007).

New Hampshire courts impose liability on landowners if it was "foreseeable that an injury might occur as a result of the landowner's actions or inactions." Kellner v. Lowney, 145 N.H. 195, 198 (2000). Similarly, premises owners may be subject to "liability for harm caused to entrants on the premises" if the harm resulted from "the owner's failure to remedy or give warning of a dangerous condition of which he knows or in the exercise of reasonable care should know." Rallis v. Demoulas Super Mkts., Inc., 159 N.H. 95, 99 (2009). This duty of care, in turn, "depends upon whether [the owner] had actual or constructive notice of the dangerous condition." Id. (citing Restatement (Second) of Torts § 343 (Am. Law Inst. 1965)).

Employers also have a duty to exercise reasonable care in the supervision, training, and instruction of their employees. Trahan-Laroche v. Lockheed Sanders, Inc., 139 N.H. 483, 485 (1995); Cutter v. Town of Farmington, 126 N.H. 836, 840 (1985). When an employer breaches this duty, it can be liable for its own negligence even if its employee was not acting

within the scope of his employment when he injured the plaintiff. Trahan-Laroche, 139 N.H. at 485. To be liable for its own negligent failure to train, supervise, or instruct an employee, however, the employee's injurious conduct must be reasonably foreseeable to the employer. See Restatement (Third) of Agency § 7.05 cmt. d (Am. Law Inst. 2006) ("Conduct that results in harm to a third person is not negligent or reckless unless there is a foreseeable likelihood that harm will result from the conduct.").

Defendants cite Gellfam's weapons policy, which restricts the use of onsite weapons to police officers, security guards, or those expressly authorized in writing—none of which included Gagnon or Briggs—to support their contention that Sheriff's injury was not foreseeable. But a real and substantial risk of injury does not become unforeseeable merely because an employer adopts a policy that prohibits conduct that contributes to the plaintiff's injuries. Instead, although the existence of such a policy may be relevant to the foreseeability issue, and it may be considered in determining the adequacy of an employer's supervision of the employee, it will rarely be determinative of the issue standing alone.

Here, what matters are the circumstances that led to Sheriff's encounter with Gagnon and Briggs. It is undisputed that this encounter occurred during the early morning hours inside a locked restaurant. Sheriff

alleges that Gagnon and Briggs were assigned to work in the empty building without any advance notice that Sheriff would be using a key he had been given to him to enter the building. Given these circumstances, it was foreseeable to the defendants that their workers might feel the need to take precautions to protect themselves should they encounter an unknown person in a restaurant they expected would be unoccupied. And there was a real and foreseeable risk that someone in Sheriff's position could face real injury if he was mistaken for an intruder. Whether defendants' supervision of Gagnon and Briggs was adequate under these circumstances is a question for the jury, but I agree with Sheriff that the risk that he would be injured in the way he claims was foreseeable.

In a final effort to save their foreseeability argument, defendants contend that it was unforeseeable that such a "brief altercation" could "frighten[] anyone to the extent that they developed a debilitating case of post-traumatic stress disorder." Doc. 86-1 at 18. In response, Sheriff cites the "eggshell plaintiff" doctrine and states that his "unusual[] susceptib[ility] to emotional injuries . . . does not absolve the defendants of liability." Doc. 88-2 at 7. I agree with Sheriff.

"One of the bedrock foundations of tort law is that the defendant takes the plaintiff as it finds him." Trull v. Volkswagen of Am., Inc., 320 F.3d 1, 10

(1st Cir. 2002). And courts have long held that liability may lie even when the "particular form of such harm may not be foreseen" so long as the harm was "of a such a character . . . to impose the need of precautionary attention and action." Chiuchiolo v. New England Wholesale Tailors, 84 N.H. 329, 544 (1930). Thus, Sheriff's particular susceptibility to emotional distress due to his childhood trauma is irrelevant to the question of legal foreseeability. Instead, the inquiry is only whether it was foreseeable that an altercation causing emotional distress would occur. On this point, the evidence establishes that the possibility of such an altercation was foreseeable.

## C.   **Scope of Employment**

Finally, defendants move for summary judgment on Sheriff's vicarious liability claim, arguing that Gagnon and Briggs acted outside the scope of their employment when they encountered Sheriff. Doc. 86-1 at 13-17. An employer may be held vicariously liable for the tortious acts of its employee if the employee was acting within the "scope of his employment" when the tortious act injured the plaintiff. Daigle v. City of Portsmouth, 129 N.H. 561, 579 (1987) (citing Restatement (Second) of Agency § 219(1) (Am. Law Inst. 1958)). Under New Hampshire law, an employee's conduct is within the scope of his or her employment if "(a) it is of the kind he or she is employed to perform; (b) it occurs substantially within the authorized time and space

limits; and (c) it is actuated, at least in part, by a purpose to serve the master." Pierson v. Hubbard, 147 N.H. 760, 766 (2002) (citing Restatement (Second) of Agency § 228 (Am. Law Inst. 1958)). Whether an employee's conduct falls within the scope of employment is a question of fact. Porter v. City of Manchester, 155 N.H. 149, 158 (2007).

Defendants argue that Sheriff's complaint does not adequately raise the issue of vicarious liability and, in any event, that he has failed to provide sufficient evidence to support his claim. Doc. 86-1 at 14-15. I am unpersuaded by either argument.

1.   Pleading Vicarious Liability

Defendants argue that Sheriff cannot maintain a vicarious liability claim against either defendant because the second amended complaint "fails to even allege" that Gagnon and Briggs' conduct occurred within the scope of their employment. Id. at 14. Sheriff does not address defendant's position on this matter; nevertheless, I find defendants' argument unavailing.

Sheriff's second amended complaint alleges that Gagnon and Briggs were "employees and/or agents of one or more of the defendants" and that "defendants' employees and[/]or agents, who were on the premises at the time in question, also owed a duty of care, to refrain from carrying and displaying dangerous and frightening appearing weapons without any provocation

17

and/or without taking reasonable steps to investigate the plaintiff's identity and purpose for being on the defendant's property." Doc. 48 at 2-3. Considering that Sheriff only named the corporate entities as defendants and construing his complaint generously, it is minimally sufficient to state a plausible vicarious liability claim.

      2.   <u>Proving Vicarious Liability</u>

      Defendants argue that Gagnon and Briggs were not acting within the scope of their employment when they confronted Sheriff because their responsibilities were limited to "fixing and cleaning" Five Guys restaurants "after the restaurant[s] had closed," and accordingly, their duties did not warrant the use of dangerous weapons or interactions with third parties, such as delivery personnel. Doc. 86-1 at 14-15. They also cite Gellfam's restrictive weapons policy as support for this assertion. Id. at 15. Sheriff responds by noting that Gagnon and Briggs were scheduled to work "during the night in an otherwise empty building where help from other employees and passersby was not immediately available," and, from this, a jury could reasonably infer that their responsibilities included "protect[ing] their employer's property from damage by intruders, as well as protecting themselves." Doc 88-2 at 6.

Although defendants correctly assert that Gagnon and Briggs were not employed to interact with delivery personnel, investigate suspicious behavior, or brandish weapons, the inquiry is not so narrow. New Hampshire follows the Restatement (Second) of Agency in recognizing that an employer may be held vicariously liable "for the tortious acts of an employee committed incidental to or during the scope of employment." Trahan-Laroche, 139 N.H. at 485 (emphasis added); accord Restatement (Second) of Agency § 229(1) (Am. Law Inst. 1958). It also tracks the Restatement in recognizing that "[a]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment." Porter, 155 N.H. at 155-56 (quoting Restatement (Second) of Agency § 230 (Am. Law Inst. 1958)).

In this case, neither Gagnon and Briggs' narrow job description nor Gellfam's weapons policy necessarily shield defendants from liability. Rather, Gagnon and Briggs were subjected to working conditions that exposed them to certain inherent risks—namely, working during the night when the restaurants were otherwise empty and immediate help was unavailable. Furthermore, there is evidence that at least Gagnon appreciated those risks. During his deposition, Gagnon testified that he feared for his safety at times, such as the night when he watched a man steal his truck, which was eventually returned to him with someone else's weapon inside. Doc. 86-11 at

33. Accordingly, a jury could reasonably find that Gagnon and Briggs were tasked with protecting themselves, their personal property, or the premises while onsite and that their actions during the encounter with Sheriff were at least in part committed within the scope of their employment.

Although defendants cite several cases in support of their argument, none involved allegedly tortious conduct resulting from a hazard of the employee's job. For example, in Priestley v. Newlin, the court found that a prison employee did not act within the scope of his employment when he groped the plaintiff's genitals during a strip search because the employee was not authorized to have any contact with the inmate's genitals, and there was no "security reason" that created such a necessity. No. 14-cv-148-LJ, 2016 WL 3023826, at *3 (D.N.H. Apr. 28, 2016), report and recommendation adopted 2016 WL 3024059 (D.N.H. May 24, 2016); see also Sullivan v. Transp. Sec. Admin., 2010 DNH 151, 2010 WL 3269881 (D.N.H. Aug. 19, 2010) (finding that a Transportation Security Administration agent did not act within the scope of his employment when he stole a passenger's watch during a routine security check); May v. Dartmouth Hitchcock Med. Ctr., 2003 DNH 111, 2003 WL 21488697, at *1 (D.N.H. June 24, 2003) (ruling that a medical employee did not act within the scope of her employment when she disclosed a patient's

medical records "on her own time, at a private function, and entirely for her own purposes").

Instead, I am persuaded by cases from other jurisdictions that recognize that whether an employee is acting within the scope of his employment when he overreacts to a perceived threat to his personal safety while performing his employers' business is generally a jury question. See, e.g. Trabulsy v. Publix Super Mkt., Inc., 138 So. 3d 553, 555-56 (Fla. Dist. Ct. App. 2014); Garcia v. Fuentes, No. 43698, 1982 WL 5283, at *3-4 (Ohio Ct. App. Apr. 8, 1982); Tymiv v. Lowe's Home Ctrs., LLC, No. A-0222-20, 2021 WL 3234459, at *7 (N.J. Super. Ct. App. Div. July 30, 2021). Accordingly, I reject defendants' summary judgment challenge to Sheriff's vicarious liability claim.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment, Doc. 85, is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

October 23, 2023

cc:     Counsel of Record